GAILLARD T. BOAG, Respondent, *v.* JAMES N. THOMPSON and Others, Appellants, Impleaded with EDWARD SHEEHAN, Defendant.

Second Department, February 7, 1924.

Partnership — joint venture — agreement to purchase and conduct restaurants as distinct corporations and divide profits — corporations were duly organized — complaint in action by party to said agreement who was minority stockholder in said corporations to secure rights as partner or joint venturer is insufficient — injunction denied — plaintiff's only remedy is under corporation laws.

A complaint in an action to secure to the plaintiff rights as a partner or joint venturer fails to state a cause of action so as to warrant the granting of an injunction, where it appears that the plaintiff and two individual defendants, pursuant to agreement, acquired several restaurants, caused them to be conducted and managed through corporations duly organized in each of which the plaintiff was a minority stockholder; that under said agreement the restaurants were to be acquired and operated for and on behalf of plaintiff and said defendants, whether in the form of partnerships or corporations, and that profits were to be distributed whether direct from the partnership or as a result of dividends from the corporations; and the plaintiff alleges that the defendants have failed to account for moneys drawn from the corporations, have threatened to exclude plaintiff from participation in the management thereof, and have unlawfully failed and refused to declare dividends.

The plaintiff is not entitled to invoke the aid of a court of equity in securing to himself from the several corporations the rights and remedies to which he would be entitled under a partnership or joint venture on the ground that said corporations are engaged in partnership transactions through corporate forms.

*It seems,* that the plaintiff's only remedy is under the corporation laws of the State in an action by the corporation itself or in a stockholder's action.

APPEAL by the defendants, James N. Thompson and others, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Nassau on the 5th day of January, 1924, granting an injunction *pendente lite.*

*Abel E. Blackmar* [*A. I. Nova* with him on the brief], for the appellants.

*James A. Gray* [*Philip A. Brennan, Fred S. Lyke* and *William S. Butler* with him on the brief], for the respondent.

MANNING, J.:

The injunction order was granted upon the complaint and certain supporting affidavits, and provides that until the trial and determination of the action " the defendants and each of them, their attorneys, officers, agents, servants and employees, and the plaintiff, his attorneys, officers, agents, servants and employees, be and

they and each of them hereby are restrained and enjoined from doing any act in any way changing or affecting the rights and the status of the rights of the parties to this action as they now exist, or disposing of any of the properties and assets of the properties of the joint enterprises described in the complaint herein or changing or disposing of in any way the assets of the Jefferson Hotel & Restaurant Co., Inc., Russell Hotel & Restaurant Co., Inc., Century Restaurant Co., Inc., Eldar Restaurant Co., Inc., Armenonville Hotel & Restaurant Co., Inc., Orville Hotel & Restaurant Co., Inc., Club Royale, Inc., Aldridge Realty Co., Inc., and Orono Restaurant Co., Inc., except that such injunction shall in no way enjoin or restrain the usual conduct of the businesses of said corporation of restaurant businesses."

The court, at Special Term, in granting the injunction order, stated that from the papers submitted it seemed clear that the plaintiff and the principal individual defendants were " co-venturers," and that the " incorporation of the separate businesses was merely a means of carrying on each of those businesses," and that it " was really all one business conducted under different names."

As I view the situation disclosed by the moving papers, and giving to the plaintiff's claim the most liberal construction, I reach a different conclusion, and am of the opinion that the complaint states no cause of action, and that, therefore, the court was without power to issue the injunction.

The plaintiff's theory of his action is that certain of the individual defendants and himself became " co-partners " or " co-venturers " in the business of purchasing and carrying on restaurants in the city of New York and elsewhere, and that the scheme of the persons concerned was that such restaurants as they purchased were to be carried on as separate and distinct corporations and under separate and distinct corporate names.

It appears without dispute that in the fall of 1917 the plaintiff and certain of the individual defendants purchased and acquired the lease of a restaurant known as the " Moulin Rouge," in New York city, and by mutual agreement of the parties a corporation was formed to take over the place. The restaurant was to be conducted and operated by the corporation to be thus formed, and the capital stock, assets and profits from the operation of the place were to be owned by the plaintiff and his associates in equal shares, represented by shares of stock, in proportion to their holdings. The plan agreed upon called for the election of dummy incorporators and directors, under control of the plaintiff and his associates, and the stock was to be held by these dummies as

trustees for those directly concerned. Subsequently several other restaurants were purchased in a similar manner, and various corporations were organized and became existing corporations engaged in carrying on the several enterprises, and it is the claim of the plaintiff that each of these separate enterprises was very successful and profitable.

It conclusively appears that the plaintiff and the individual defendants Salvin and Thompson, between 1917 and 1921, acquired six different restaurants, and caused them to be conducted and managed through corporations organized for the purpose, and that in all of these corporations or organizations the plaintiff was a minority stockholder, his holdings varying from fifteen to thirty-three and one-third per cent. It also appears that the agreement between the plaintiff and the individual defendants Salvin and Thompson was, and was intended to be, that all the properties referred to were to be acquired and operated for and on behalf of the plaintiff and the defendants Salvin and Thompson, whether in the form of partnerships or corporations; and were to be held for the benefit of the plaintiff and the defendants Salvin and Thompson; and that the profits thereof were to be distributed, whether as profits direct from the partnership, or as a result of dividends from corporations, in the proportions as their ownership existed, pursuant to the original agreement. It is further alleged in the complaint that the profits and assets of these various corporations, and the stock thereof, is, in truth and in fact, the property of the plaintiff and the two individual defendants named.

The plaintiff's grievance against the individual defendants, as alleged in his complaint, is that they have taken possession of the books and property of the several corporations and have excluded the plaintiff therefrom; that the individual defendants have drawn out large sums of money, constituting profits, and have failed to account therefor; that they have, directly or indirectly, caused false and fraudulent books of account to be kept; that they threaten to manipulate the corporations so as to exclude the plaintiff from participating therein; that they threaten to call meetings of the directors of certain of the corporations; that they have unlawfully failed and refused to declare dividends, and that the plaintiff believes that the defendants will endeavor to oust him from participating in the profits. The plaintiff alleges on information and belief that the defendants named have entered into a conspiracy to defraud him, and that he has been precluded from sharing in the profits of the corporations. He also claims in his complaint that he is the sole owner of two other restaurants wherein the defendants claim an interest, and by means of dummy directors threaten to oust him therefrom.

In opposition to the motion for the injunction, on the part of the defendants, there was filed an extract from an affidavit made by the plaintiff in certain litigation pending in New York county on the 20th day of January, 1920, wherein the plaintiff positively swore that no partnership had ever existed between the plaintiff and Salvin and Thompson, the individual defendants named herein. In a replying affidavit filed herein, the plaintiff explains this affidavit by saying that it is true, but that the enterprise referred to in his complaint is not a partnership, but a " joint venture."

The moving papers on the part of the defendants show that all of the several corporations mentioned were regularly organized, that certificates of stock were issued in each of them, and that the plaintiff in each case received his full share of the same; and in certain instances the plaintiff himself signed as an officer of the corporation issuing these same stock certificates. It was also shown that the plaintiff had borrowed the sum of $10,000 on some of this stock, and had pledged the stock of some of these same corporations as security for the loan made to him.

From the foregoing it thus appears that the sole aim of the plaintiff in this case is to invoke the aid of a court of equity in securing to him from the several corporations the rights and remedies to which he would be entitled under a " partnership " or " joint venture," on the ground that the several corporations are engaged in partnership transactions through corporate forms. There is no principle of law which warrants this view, and hence the complaint fails to state a cause of action justifying an injunction.

It appears here, without dispute, that the plaintiff is a stockholder in these different corporations, and his own declaration is to the effect that while there never was a copartnership, there existed what he terms a " joint venture." Even if this be so, the same rules of law apply to joint ventures as to partnerships. His only remedy, so far as I can see, is under the corporation laws of this State in an action by the corporation itself, or in a stockholder's action. He cannot be a stockholder and seek relief as a copartner or as a joint venturer, for surely he is either one or the other.

Legal principles governing a situation of the kind presented before us by this record have been decided in numerous cases, notably in the case of *Jackson* v. *Hooper* (76 N. J. Eq. 592, 598), where Judge DILL, speaking for the court, says: " It is claimed, however, that these owners of all the stock were really copartners, doing business in corporate form for their own convenience, and that a court of equity has the power to control the property and affairs of the companies even to the extent of eliminating the

corporate functions and powers as mere incidents and wholly disregarding the substantive law governing the creation, supervision and. dissolution of corporations. We cannot subscribe to any such doctrine. An agreement or course of dealing by which corporations are organized for the purpose of using them merely as agencies or instrumentalities, or forms in the conduct of a copartnership or joint business, and by the consent of the parties in interest to be independent of statutory control, cannot be recognized, enforced or perpetuated by the Court of Chancery in this State. *  *  * The law never contemplated that persons engaged in business as partners may incorporate, with intent to obtain the advantages and immunities of a corporate form, and then, Proteus-like, become at will a copartnership or a corporation, as the exigencies or purposes of their joint enterprise may from time to time require. The policy of the law is to the contrary. If the parties have the rights of partners they. have the duties and liabilities imposed by law and are responsible *in solido* to all creditors. If they adopt the corporate form, with the corporate shield extended over them to protect them against personal liability, they cease to be partners and have only the rights, duties and obligations of stockholders. They cannot be partners *inter sese* and a corporation as to the rest of the world. Furthermore, upon grounds of public policy, the doctrine contended for cannot be tolerated as it renders nugatory and void the authority of the Legislature — a co-ordinate branch of the government — established by the Constitution in respect to the creation, supervision and winding up of corporations."

To the same effect see the very interesting case of *Brock* v. *Poor* (216 N. Y. 387), where Judge HISCOCK examined the subject and cited many relevant decisions. Among other cases he cited *Jackson* v. *Hooper (supra).* (See, also, *Seitz* v. *Michel,* 148 Minn. 80; 181 N. W. Rep. 102; 12 A. L. R. 1060.)

The respondent here lays considerable stress upon the case of *King* v. *Barnes* (109 N. Y. 267) as an authority for the granting of the injunction here complained of. An examination of the case, however, shows that it is not in point. In *King* v. *Barnes* the plaintiffs and defendant Barnes went into a joint venture. The joint venture was to purchase land, organize a corporation, convey that particular land to the corporation and distribute the stock among the promoters. The action was brought only to secure to the plaintiff and his associates their just proportion of the capital stock. As Chief Judge RUGER said in his opinion (at p. 282): " The only real issue in the case was between the plaintiffs and the defendant Barnes, as to who were the real or equitable owners of the stock in Barnes' possession."

Under the circumstances as disclosed by the record in this case, I think the granting of the injunction was unwarranted, and that the order appealed from should, therefore, be reversed on the law, and the motion for an injunction denied, with ten dollars costs and disbursements.

KELLY, P. J., RICH, KELBY and KAPPER, JJ., concur.

Order reversed on the law, with ten dollars costs and disbursements, and motion for injunction denied, with ten dollars costs.