LESLIE SCHLESINGER, Plaintiff, *v.* GALINA KASACHKOFF, Defendant.

Supreme Court, Trial Term, New York County, April 22, 1949.

*Norbert Ruttenberg* for plaintiff.

*George M. Stromberg* and *Jacob Rubenstein* for defendant.

DICKSTEIN, J. This is an action on a promissory note delivered to plaintiff as consideration for the purchase of 100 shares of stock in a corporation known as " Kay Togs, Inc.". The shares of stock had been deposited in escrow pending delivery of the promissory note and the execution of a number of documents. All conditions having been complied with by the plaintiff, the stock certificates were to be delivered when the note was delivered. The note was never paid.

The testimony before me showed that the plaintiff's actions in connection with this transaction were sharp and that he was intent on getting out of the business in such a manner that the defendant would be obliged to pay some obligations which were not even due so as to save him harmless against possible future claims, and that he did not do anything to advance the interests

of the defendant. Nevertheless, there is no claim of fraud in the answer and the defendant resists payment only by claiming two separate defenses: (1) failure to affix stock transfer stamps as provided by article 12 of the Tax Law, and (2) that the plaintiff failed to perform duties imposed on him by the agreement relating to the sale of the stock.

At the trial defendant contended that it was the plaintiff's duty to continue to devote his time to the business of Kay Togs, Inc., notwithstanding the sale of shares of stock thereof, but as I read the agreement in question such duty existed only " up to and including the date of payment or the exercise of election by Schlesinger [the plaintiff], whichever occurs sooner," and it is quite clear that the defendant could not " blow hot and cold ", not pay the note and yet insist on plaintiff's continuing to work in the business. As a matter of fact, this defense is not seriously pursued by the defendant and must be dismissed, particularly as the defendant saw fit to assert this defense by way of counterclaim, and no satisfactory proof was offered of any damage to defendant by reason of this alleged defense.

There remains, therefore, the question raised by the defendant as to the applicability of the Tax Law, which is contained in defendant's answer as allegation numbered 5 and reads as follows: " That at the time of the delivery of said shares of stock the plaintiff failed to procure, affix and cancel stamps and pay the tax provided for by Article 12 of the Tax Law."

The defendant considers this situation as a complete bar to plaintiff's cause of action. But defendant evidently overlooks the amendment to this section of the Tax Law passed in 1945, which imposed the duty to pay the transfer tax on the sale of stock *not* on the seller *exclusively* but equally on the seller as well as the purchaser (Tax Law, § 270, subd. 3). This must surely be the case where the purchaser did not even pay for the stock but delivered a note which was not paid and which defendant refuses to pay. Prior to 1945, it would nevertheless have been the plaintiff's duty to affix the transfer stamps and he is still obliged to do so if the defendant does not. But it would be most inequitable, under the circumstances disclosed in this case, to deprive the plaintiff of his right to obtain the payment of the note where the agreement does not impose on him this *exclusive* duty and the law makes both parties equally liable to comply therewith.

In *Cooper* v. *Gossett* (263 N. Y. 491, 494–495) the court said: " Assuming for the moment that the transfer is the ' basis ' of

this action, within the meaning of section 278, we are nevertheless of the opinion that the defendant may not, under the circumstances disclosed by the evidence, take advantage of the plaintiff's failure to pay the tax. The transfer was not void. By it the title to the stock was vested in the defendant. In the event of suit against him, he could waive the defense under section 278 by failing to plead it. (*Bean* v. *Flint,* 204 N. Y. 153). That being so, he could waive it in any other way. Here the defendant, knowing of the failure of plaintiff to pay the tax, nevertheless paid the plaintiff subsequent to the transfer $75 on account of the note. He might very well be held thereby to have waived the statutory defense.''

Since this decision antedates the amendment of 1945, it is even more obvious that under the present law the defendant cannot escape her liability by reason of the plaintiff's alleged failure to affix the stamps. Continuing from the above-quoted decision in *Cooper* v. *Gossett* (*supra*):

'' Whether there was a waiver or not, it would be against all conscience to permit the defendant to take advantage of the plight into which his own fraud has cast the plaintiff. Against the policy which demands enforcement of tax statutes may be weighed the policy which demands honest dealing between man and man and the prevention of bald fraud. Since the State has power to inflict severe penalties, both civil and criminal, for a violation of the statute, its enforcement will not be seriously affected by depriving a transferee of an optional defense when he has clearly forfeited his right to it by his own evil and misleading conduct. So far as any relevant public policy is concerned, there is no distinction between waiver and estoppel.

'' Where a transferee waives the statutory defense, or is by his conduct precluded from asserting it, there seems to be nothing in the law which prevents him from paying the tax and affixing the stamps himself. While it is primarily the duty of the transferor to do so, a failure to perform that duty merely subjects him to the statutory penalties. An executed sale which passes a valid title to the stock, also confers the right to have it transferred on the corporate books, provided the tax is paid by somebody before that transfer is made. What the State is chiefly interested in is the payment of the tax. (*Matter of Borst,* 129 Misc. Rep. 424; affd., 222 App. Div. 707; affd., 248 N. Y. 556; compare Tax Law, § 272.) The defendant could have paid the tax as he agreed to do.

'' Since the defendant is precluded by his own acts from setting up the defense in question, it becomes unnecessary to

determine whether the action here is or is not based upon the transfer. (Cf. *Matter of Wylly,* 210 Fed. Rep. 954.)''

Clearly, where the obligation to pay the tax rests on both parties, as the law now stands, the defendant cannot refuse to pay the note by reason of something she is in a position to remedy.

Judgment for plaintiff in the sum of $7,000, with interest.

Thirty days' stay and sixty days to make a case.